IN RE PROCEEDINGS TO CHANGE BOUNDARIES OF
HEARTWELL SCHOOL DISTRICT R-4 AND MINDEN SCHOOL
DISTRICT R-3.
BOARD OF EDUCATION OF HEARTWELL SCHOOL DISTRICT
R-4 ET AL., APPELLANTS, V. SARAH JEPSEN,
KEARNEY COUNTY SUPERINTENDENT OF SCHOOLS, ET AL.,
APPELLEES.

319 N.W.2d 68

Filed May 7, 1982. No. 43922.

Arthur R. Langvardt of Fitzke & Langvardt, for appellants.

Knapp, Mues, Sidwell, Anderson, Shofstall & Beavers, for appellees Jurgensmier and Joyce.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

This is an appeal from a judgment of the District Court for Kearney County affirming an order of the Kearney County superintendent of schools transferring certain real estate from Heartwell School District R-4 to adjacent Minden School District R-3. The Board of Education of Heartwell School District R-4 and various taxpayers in that school district have appealed.

On February 16, 1979, the Board of Education of Minden School District R-3 voted to authorize a joint

petition with the Board of Education of Heartwell School District R-4 to change the boundaries of the two school districts. The Board of Education of Heartwell School District R-4 also voted to authorize the joint petition on February 19, 1979. Both school districts are in Kearney County.

The joint petition was filed with the Kearney County School District Reorganization Committee on March 1, 1979. The joint petition stated that it was filed under the provisions of Neb. Rev. Stat. §§ 79-402, 79-402.03 (Reissue 1976), and other statutes. The petition sought to change the boundaries of the two districts and detach the various tracts of land from the Heartwell district and attach, annex, and include them in the Minden district. The petition called for the transfer of 28 parcels of land totaling 4,392 acres. None of the tracts to be transferred were contiguous to the Minden district. Some of the 28 parcels were contiguous to each other and there were some 8 or 9 separate areas or tracts distributed through the Heartwell district. It was stipulated that some of the owners whose land was to be transferred did not have children in school. The petition stated that the proposed reorganization and change of boundaries was to be made so that the property to be transferred was to be assessed, valued, and taxed as a part of the Minden district and no longer as a part of the Heartwell district.

On May 7, 1979, the State Committee for School District Reorganization reviewed the petition proposal and voted to approve it. The state committee directed the Kearney County superintendent of schools to proceed with hearing and determination of the validity and sufficiency of the petition as prescribed by statute.

In a case filed by a member of the Board of Education of the Heartwell district in the District Court, the court issued a writ of mandamus to the county superintendent of schools on June 19, 1979, ordering

her to advertise and hold a hearing to determine the validity and sufficiency of the signatures on the joint petition and, if found valid and sufficient, to effect immediately the changes in boundaries as called for in the petition. The statutory procedures were then followed and the county superintendent of schools ordered the land transferred from the Heartwell district to the Minden district effective August 17, 1979. On August 27, 1979, the Board of Education of Heartwell School District R-4 and various residents and taxpayers appealed to the District Court.

The District Court found that the order of the county superintendent of schools implementing the change of boundaries sought in the joint petition of the boards of education of the Heartwell and Minden districts was proper in all respects, and affirmed the order of the county superintendent. This appeal followed.

The appellants contend that a school district must consist of one compact contiguous area of land within one set of boundary lines, and that under § 79-402 and related sections separate legally described tracts of land in one school district cannot be transferred to another school district to which they are not contiguous.

The statutory provisions involved stem from § 79-402. That section provides in part: "The county superintendent shall create a new district from other districts, or *change the boundaries* of any district upon petitions signed by sixty per cent of the legal voters of each district affected . . . ." The remainder of the section specifies the requirements for petitions and their review and approval or disapproval, and specifies that the county superintendent shall hold a hearing to determine the validity and sufficiency of the petitions, and: "Upon determination, as a result of the hearing, that sufficient valid signatures are contained in the respective petitions, the county superintendent shall proceed to ef-

fect *the changes in district boundary lines* as set forth in the petitions . . . ." (Emphasis supplied.)

Section 79-402.03 provides: "In addition to the petitions of legal voters pursuant to section 79-402, changes in boundaries or the creation of a new district from other districts may be initiated and accepted by:

"(1) The board of education of any Class III, IV, V, or VI district; and

"(2) The board of education of any Class I or II district in which is located a city or incorporated village."

Neb. Rev. Stat. § 79-402.06 (Reissue 1976) provides: "Petitions presented pursuant to sections 79-402.03 to 79-402.05 shall be subject to the same requirements for content, hearings, notice, review, and appeal as petitions submitted pursuant to section 79-402."

Neb. Rev. Stat. § 79-426.01 (Reissue 1976) provides in part: "As used in sections 79-426.01 to 79-426.19 and 79-426.22, unless the context otherwise requires: (1) The term reorganization of school districts shall mean the formation of new school districts, the alteration of boundaries of established school districts, and the dissolution or disorganization of established school districts through or by means of any one or combination of the methods set out in section 79-426.02 . . . ."

Neb. Rev. Stat. § 79-426.02 (Reissue 1976) provides: "Reorganization of school districts may be had and accomplished through or by means of any one or more of the following methods: (1) The creation of new districts; (2) the uniting of one or more established districts; (3) the subdivision of one or more established districts; (4) *the transfer and attachment to any established district of a part of the territory of one or more districts;* and (5) the dissolution or disorganization of any established district for any of the reasons specified by law." (Emphasis supplied.)

The appellants contend that by using the language "change the boundaries" of school districts the Legislature intended to restrict the authorization to a common boundary line between two school districts which are in one compact and contiguous mass and to limit any transfer of property from one district to another to property which is contiguous to the common boundary line. They rely on the definition of boundary in Black's Law Dictionary 169 (5th ed. 1979): "Every separation, natural or artificial, which marks the confines or line of division of two contiguous properties." We note that the same dictionary defines the term "boundary" as: "Limits or marks of enclosures . . . or the boundaries or limits stated in title deed . . . ." Lands within any school district are described by legal description for taxation, and inclusion of the land within the school district furnishes the basis for school district taxation.

The most obvious demonstration of what the Legislature intended when it referred to "boundaries" of school districts is found in Neb. Rev. Stat. § 79-403 (Reissue 1976). That section provides for freeholder transfers of land from one school district and attachment to another under which no requirement of contiguity is imposed and under which, if the necessary requirements are met, land described by tax descriptions is detached from one school district and attached to another district. The section is divided into two parts, the first of which authorizes transferring the land from one school district to an adjoining school district when certain conditions have been met. That portion of § 79-403 provides in part: "The board may, after a public hearing on the petition, thereupon change the boundaries of the districts so as to set off the land described in the petition and attach it to such adjoining district as is called for in the petition whenever they deem it just and proper and for the best interest of the petitioner or petitioners so to do."

The second portion of § 79-403 deals with freeholder transfers from a nonaccredited district to an accredited district in the county of the petitioner's residence or an adjoining county. That portion provides in part: "All procedures as provided in subsection (1) of this section including provisions for the transfer of property across county lines shall apply to this subsection except that the board shall in this instance change the boundaries where it is found that all provisions as herein set forth have been met."

Neb. Rev. Stat. § 79-409 (Reissue 1976) provides: "The county superintendent shall file in his office all petitions that have been granted for change of boundaries or for the formation of new districts. Such petitions so filed and granted shall be prima facie evidence of the boundaries of districts. All conflicting records of boundaries shall be made to correspond with the petitions so filed and granted."

There can be no serious question that the Legislature has clearly indicated that the boundaries of school districts are not restricted to compact contiguous areas of land but may include separated and noncontiguous areas as well. The numerous cases of freeholders' petitions over the years is a graphic demonstration of the legislative policy as to school district boundaries. Exhibit 2 in the case at bar shows at least five separate areas of noncontiguous land not involved in the present case which are presently a part of the Minden school district, four of which are located in an adjoining county.

An examination of the statutes dealing with the area and boundaries of school districts convinces us the authorization to change the boundaries of school districts under §§ 79-402 and 79-402.03 and related sections, where the districts are adjoining, is not limited to lands in one compact contiguous area, nor is the transfer of land from one school district to another school district limited to land which is contigu-

ous to the common boundary between the two districts. It would have been easy enough for the Legislature to express that intention had it desired to do so, and it may also change that expression if it so desires.

This court will not by interpretation or construction usurp the function of the legislative body and give a statute a meaning not intended or expressed by the Legislature. This court cannot, under the guise of its powers of construction, rewrite a statute, supply omissions, or make other changes. See *Bessey v. Board of Educational Lands & Funds,* 185 Neb. 801, 178 N.W.2d 794 (1970).

The judgment of the District Court was correct and is affirmed.

AFFIRMED.